UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PRODUCTS AND VENTURES INTERNATIONAL**,<br><br>            Plaintiff,<br><br>       v.<br><br>**AXUS STATIONARY (SHANGHAI) LTD., ET AL.**,<br><br>            Defendants. | Case No.  16-cv-00669-YGR<br><br>**ORDER GRANTING IN PART DENYING IN PART MOTION TO DISMISS; GRANTING MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 106, 117, 128 |

Plaintiff Products and Ventures International brings this action against defendants[1] for alleged breaches of contract and tort claims relating to a wooden pencil distribution agreement. The Court previously dismissed the complaint for lack of personal jurisdiction, but granted leave to amend and provided a period for jurisdictional discovery. (Dkt. No. 72.)  Plaintiff filed its amended complaint on September 19, 2016 (Dkt. No. 100, "FAC"), specifically alleging against all defendants:  (i) Count One, breach of contract; (ii) Count Two, breach of the implied covenant of good faith and fair dealing; (iii) Count Three, intentional interference with contract; and (iv) Count Four, intentional interference with prospective economic advantage.[2]

---

[1] Currently, plaintiff has effected service on the following defendants:  Axus Stationery (Hong Kong) Ltd. ("Axus HK"), Andre Viegas, Highton Ltd., Roberta Trading Corporation, Kenpark Ltd., Howin Investments Ltd., and Noblesse (Hong Kong) Limited (collectively, the "Served Defendants").  Plaintiff is continuing its efforts to serve other defendants that currently reside in the People's Republic of China, namely:  Axus Stationery (Shanghai) Ltd. ("Axus Shanghai"), Shanghai Marco Stationery Co., Shanghai Laikesheng Pen Material Co. Ltd. ("Shanghai Lexon"), and Brian Peifeng Xu (collectively, the "Unserved Defendants").  The Court's findings in this Order apply only to the Served Defendants, and shall not be deemed to preclude any arguments that could be made by or against the Unserved Defendants.

[2] Additionally, plaintiff brings a fifth claim for Trade Secret Misappropriation against Axus Shanghai only.  Because Axus Shanghai has yet to be served in this matter, the Court does not further address that count here.

Currently before the Court is the Served Defendants' motion to dismiss the FAC on the following grounds: (i) lack of personal jurisdiction as to each Served Defendant under Federal Rule of Civil Procedure 12(b)(2) and (ii) failure to state a claim as to certain claims and defendants under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 106.) Additionally, defendants have moved to strike certain declarations filed by plaintiff in connection with its opposition to defendants' motion to dismiss. (Dkt. No. 128.)[3]

Having carefully reviewed the pleadings, the papers and exhibits submitted on these motions, and oral argument from counsel heard on January 10, 2017, and for the reasons set forth more fully below, the Court **GRANTS IN PART** and **DENIES IN PART** Served Defendants' motions as follows: The Court **GRANTS** defendants' motion to strike the declarations of Russell and Liao (Dkt. Nos. 114, 115). The Court **GRANTS** defendants' motion to dismiss Axus HK, Highton, Howin, and Noblesse for lack of personal jurisdiction, and **DENIES** the same as to Roberta Trading, Mr. Viegas, and Kenpark. The Court **GRANTS** defendants' motion to dismiss for failure to state a claim as to Kenpark and Mr. Viegas with regards to Counts One and Two, and **GRANTS** the motion to dismiss as to Kenpark and Roberta Trading with regards to Counts Three and Four. Thus, the only claims remaining in this action with respect to the Served Defendants are Counts One and Two against Roberta Trading and Counts Three and Four against Viegas.

**I.   BACKGROUND**

Plaintiff is a worldwide supplier of components for use in the manufacturing of wooden pencils. (FAC ¶ 28.) Plaintiff was incorporated in California in 1995 and had its principal place of business in California from 1995 until April 2009. At such time, it re-incorporated under the laws of Delaware, and then subsequently moved its business operations to Italy. (*Id.* at ¶¶ 1, 28.)

---

[3] In connection with its opposition to the Served Defendants' motion to dismiss, plaintiff filed an administrative motion to file under seal certain exhibits designated by defendants as confidential. (Dkt. No. 117.) On November 16, 2016, the Court ordered defendants to file a declaration, as the designating party, establishing that the designated material was sealable. (Dkt. No. 122.) On November 28, 2016, defendants responded to the Court's order and indicated that they are not requesting that the Court seal such documents and that they consent to the documents being filed on the public docket. (Dkt. No. 131.) Accordingly, the Court **DENIES** plaintiff's administrative motion to seal the same.

In 1997, plaintiff entered into a distribution agreement (Dkt. No. 100-1, the "Agreement") with defendants Shanghai Marco and Marco Trading[4] wherein plaintiff would provide Shanghai Marco with trade secrets regarding advanced processes for slat and pencil manufacturing, and Shanghai Marco would, in return, agree to supply plaintiff exclusively with raw materials used for pencil manufacturing. (FAC ¶¶ 28–44; Agreement § 5.) Shanghai Marco also granted plaintiff the exclusive worldwide right to sell Shanghai Marco's products, with some limited exceptions. (*See* Agreement § 5.) Additionally, the Agreement had a term of eight years, and PVI had "sole discretion to exercise an option to renew" for an additional eight year term, so long as it satisfied certain minimum annual sales quota requirements. (*Id.* at ¶ 44.) In 2005, plaintiff exercised this option to renew the Agreement for another term. Relevant to the instant motions, the Agreement also contained a choice-of-law provision and a forum-selection clause.[5] Mr. Xu executed the Agreement on behalf of Shanghai Marco, and Mr. Viegas on behalf of Marco Trading. (*Id.* at ¶¶ 33–34.)

Plaintiff alleges that during its second term under the Agreement, Shanghai Marco and its assignees under the Agreement—namely, Axus Shanghai and Shanghai Lexon—began breaching their obligations under the Agreement. (*Id.* at ¶¶ 153–54.) Specifically, plaintiff alleges that such parties "stopped making sufficient product available to fulfill [plaintiff's] orders by deliberately not obtaining sufficient raw materials." (*Id.* at ¶ 155.) Instead, Shanghai Marco and its assignees began "selling their product directly to [plaintiff's] customers (or its customer's customers) without [plaintiff's] consent as required under the [Agreement]." (*Id.* at ¶ 157.) Additionally, throughout this period, at least one other defendant, Kenpark, had direct involvement in the contractual relationship between plaintiff and the signatory defendants. For instance, Mr. Viegas

---

[4] Plaintiff alleges, and defendants do not contest, that for all intents and purposes, Marco Trading has become and is currently known as Roberta Trading. (*See* FAC ¶ 15.)

[5] The choice-of-law provision provides thus: "The applicable law of this contract is the law of the State of California." (Agreement § 14.) The forum-selection clause provides thus: "If the parties are unable to agree to continue mediation, whether or not with a new mediator, then either party shall be entitled to file suit in state or federal court in San Francisco, State of California." (*Id.* at § 15(e).)

1  instructed plaintiff "to pay parts of its invoices owed to Shanghai Marco not to Shanghai Marco
2  itself, but to Kenpark as 'commission' payments." (*Id.* at ¶ 69.) Additionally, Kenpark allegedly
3  provided certain services connected to the Agreement, such as managing the sale of slats from
4  Shanghai Marco and its assignees to plaintiff. (*See* Dkt. No. 118-1, Viegas Dep. Tr. 222:2–224:9;
5  Dkt. No. 116-15, Emails re: Kenpark bank account.)

6  As to all other defendants, plaintiff contends that they are liable and subject to personal
7  jurisdiction in this forum based on its theory that all defendants are alter egos of each other.
8  Generally, plaintiff alleges that "there is such a unity of interest and ownership" among the
9  corporate defendants here that "separate identities of each" "no longer exist." (*Id.* at ¶ 144.)
10 According to plaintiff, because the two signatory defendants under the Agreement—now Shanghai
11 Marco and Roberta Trading—have been "dissolved, no one would be held to answer for the
12 misconduct alleged" and such would also "condone their repeated practice of transferring money
13 outside of China in an effort to hide it from Chinese tax authorities." (*Id.* at ¶ 145.)

**II.  MOTION TO STRIKE**

15  In connection with plaintiff's opposition to the Served Defendants' motion to dismiss, it
16 filed two declarations purporting to offer interpretations of Chinese law as applied to the evidence
17 gleaned from jurisdictional discovery, namely the declarations of Ronghua Liao (Dkt. No. 114)
18 and Julian Russell (Dkt. No. 115). Defendants argue that such declarations constitute improper
19 expert opinions on Chinese law and should, therefore, be stricken from the record.

20  Under Federal Rule of Civil Procedure 44.1, the Court "may consider any relevant material
21 or source, including testimony, whether or not submitted by a party or admissible under the
22 Federal Rules of Evidence" in determining foreign law. The Ninth Circuit has explained that Rule
23 44.1 requirements are "intended to be 'flexible and informal' to 'encourage the court and counsel
24 to regard the determination of foreign law as a cooperative venture requiring an open and
25 unstructured dialogue among all concerned." *de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th Cir.
26 2016) (internal citation omitted). The Ninth Circuit further held that the district court has an
27 "independent obligation" to ascertain the relevant foreign law. *Id.* Thus, courts must still
28 determine whether submissions from parties are sufficiently reliable. *See, e.g.*, *Tome Engenharia*

*E. Transportes, Ltda. v. Malki*, No. 94-CV-7427, 2003 WL 21372466, at *6–7 (N.D. Ill. June 12, 2003) (finding inadequate affidavit regarding foreign law where declarant did not disclose nature of legal practice giving him expertise in such law, failed to attach a translation of the guidelines and laws cited, and did not offer any authoritative support for applying guidelines consistent with his opinion) (citing *Twohy v. First Nat'l Bank of Chicago*, 758 F.2d 1185 (7thCir. 1985)).

Here, the declarations submitted by both Russell and Liao do not appear to be sufficiently reliable to establish the points of law upon which they purport to opine. Although Liao avers to his relevant legal experience and identifies some Chinese laws upon which he bases his opinions, Liao does not provide the text of such laws nor does he provide any authorities in support of his conclusions regarding such laws. Russell's declaration lacks even more indicia of reliability, failing to cite to any specific laws or to identify relevant legal experience. Accordingly, the Court **GRANTS** the motion to strike the declarations of both Russell and Liao.

In the normal course, such would not discharge the Court's duty to ascertain the relevant foreign law, and the Court may require further submissions from the parties or engage in its own independent research. *See de Fontbrune*, 838 F.3d at 997; *Tome*, 2003 WL 21372466, at *6–7. However, none of the foreign law issues raised in either declaration are relevant to the Court's rulings as to the Served Defendants' motion to dismiss. Thus, any further exploration of the same would be an unnecessary expenditure of the parties' and the Court's limited resources.

### III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

#### A. Legal Framework

A motion under Federal Rule of Civil Procedure 12(b)(2) challenges a court's exercise of personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). Where no federal statute governs personal jurisdiction, the Court applies the law of the state in which it sits.

Here, California law applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California law allows for the exercise of "jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." Cal. Civ. Proc. Code § 410.10. Due process requires that the non-resident defendant have "minimum contacts with [the forum state] such that the maintenance of the suit [would] not offend traditional notions of fair

play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones,* 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Personal jurisdiction may be either general or specific. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). The Supreme Court has also acknowledged that, because "the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (citation omitted). "Parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction," and "[w]here such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Id.* (internal citations omitted).

Plaintiff does not contend that defendants are subject to general personal jurisdiction, but rather argue that defendants are subject to jurisdiction either because defendants have consented to jurisdiction or they have met the requirements of specific jurisdiction.

Where, as here, the motion to dismiss is based on written submissions the plaintiff need only make a *prima facie* showing of jurisdiction. *Schwarzenegger*, 374 F.3d at 800. A plaintiff makes a "*prima facie*" showing by producing admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In deciding whether such a showing has been made, a district court must (i) accept as true the uncontroverted allegations in the complaint and (ii) resolve conflicts between facts contained in the parties' affidavits in a plaintiff's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). In rare circumstances, the contacts of one party may be attributed to another upon a showing that the other party is an "alter ego" of the other. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1065 (9th Cir. 2015).

6

**B.     Discussion**

The Served Defendants move this Court to dismiss them from this action for lack of personal jurisdiction. In its opposition, plaintiff argues that the Court can exercise jurisdiction over Roberta Trading, Kenpark, and Mr. Viegas directly, under either a consent or specific jurisdiction theory. As to the other Served Defendants, plaintiff argues that personal jurisdiction is proper because they are all alter egos of each other. The Court addresses both issues, in turn.

**1.     Direct Jurisdiction as to Roberta Trading, Kenpark, and Viegas**

Plaintiff contends that the forum selection clause included in the Agreement constitutes consent, at least as to Roberta Trading, one of the signatories of the Agreement. As to Kenpark and Mr. Viegas, plaintiff argues that both should be considered bound by the forum selection clause because of their close connection to the contractual relationship between plaintiff and Roberta Trading.

**a.     Consent to Jurisdiction per Forum Selection Clause as to Roberta Trading**

Plaintiff contends that the following clause in the Agreement constitutes consent to jurisdiction in California, at least as to Roberta Trading: "If the parties are unable to agree to continue mediation, whether or not with a new mediator, then either party shall be entitled to file suit in state or federal court in San Francisco, State of California." (Agreement § 15(e).) Defendants argue that such language is insufficient under California law to constitute consent to jurisdiction. *See Global Packaging, Inc. v. Superior Court*, 196 Cal. App. 4th 1623 (2011).[6]

As an initial matter, the parties disagree on whether federal or state law applies in determining the validity and interpretation of a forum selection clause. Defendants raise two arguments in this regard:

---

[6] The Court notes that, even within California, there appears to be a conflict as to the specificity required in an agreement to constitute consent to jurisdiction. *Compare Global Packaging*, 196 Cal. App. 4th at 1627 (finding that a forum-selection clause must contain a specific consent to personal jurisdiction) *with Berard Constr. Co. v. Municipal Court*, 49 Cal. App. 3d 710, 721–22 (1975) (finding that a waiver of venue in a forum-selection clause sufficiently constitutes waiver of personal jurisdiction).

7

1    First, defendants argue that courts in the Ninth Circuit have applied state law in
2    interpreting forum selection clauses, citing *Colonial Leasing Co. of New England, Inc. v. Pugh*
3    *Brothers Garage*, 735 F. 2d 380, 381–83 (9th Cir. 1984). However, in light of the Ninth Circuit's
4    more recent decision in *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir.
5    1988), defendants do not persuade. In *Manetti*, the Ninth Circuit addressed the very issue of
6    whether state or federal law applies to the validity and interpretation of a forum selection clause,
7    and explicitly recognized that it had previously applied state law to enforce a forum selection
8    clause in *Colonial Leasing*. *Id.* at 512–13. The Ninth Circuit then conducted an *Erie* analysis and
9    determined that the "federal procedural issues raised by forum selection clauses significantly
10   outweigh the state interests" and, thus, federal law "controls enforcement of forum clauses in
11   diversity cases." *Id.* (holding additionally that because "enforcement of a forum clause necessarily
12   entails interpretation of the clause before it can be enforced, federal law also applies to
13   interpretation of forum selection clauses"). Defendants have not found other controlling cases to
14   the contrary, and the Court is aware of none.[7] Thus, the Court is bound by *Manetti* and
15   acknowledges that, as a general matter, federal law governs the enforcement and interpretation of
16   a forum selection clause.

17   Second, defendants argue that where there is a choice of law provision, as here, courts in
18   the Ninth Circuit apply the law of the parties' choosing in interpreting forum selection clauses,
19   citing *E&J Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 994 (9th Cir. 2006) ("As stated
20   above, the contract clearly contains a California choice-of-law clause; thus the validity of the
21   forum selection clause should be decided by California law, as the law of the contract, rather than
22   by Ecuadorian law."). In *E&J Gallo*, the Ninth Circuit did not opine on the issue at hand here.
23   Rather, the quoted material was made in passing reference during a discussion of comity.[8]

---

[7] The only other case cited by defendants within this circuit for the proposition that state law applies is *General Insurance Co. of America v. Fort Lauderdale Partnership*, 740 F. Supp. 1483, 1487 (W.D. Wash. 1990) (citing *Colonial Leasing*, 735 F.2d at 382). Although *Ft. Lauderdale* was published after *Manetti*, it fails to address the Ninth Circuit's decision in *Manetti*, and, therefore, this Court finds that it is unpersuasive.

[8] Specifically, the Ninth Circuit in *E&J Gallo* was asked to review a district court's denial of a preliminary injunction seeking to enjoin defendant from proceeding with litigation in

1  Further, the Ninth Circuit reversed the district court for not enforcing a forum-selection clause

2  quite similar to the one here.[9]  Thus, the Ninth Circuit's decision in *E&J Gallo* did not implicate

3  the concerns addressed in *Manetti*, in which the Ninth Circuit decided that, where there is a

4  conflict between federal and state law with regards to forum selection clauses, federal law

5  controls.  *See also WF Capital, Inc. v. Barkett*, No. 10-CV-524-RSL, 2010 WL 3064413, at *6

6  (W.D. Wash. Aug. 2, 2010) (applying federal law to enforcement and interpretation of forum

7  selection clause despite Washington choice-of-law provision) (citing *Manetti*, 858 F.2d at 513).

8      The Court thus next turns to whether, under federal law, the forum selection clause at issue

9  is sufficient to constitute consent to jurisdiction in California:

10      Plaintiff contends that federal courts in this circuit have found language similar to the

11  language at issue here sufficient to constitute consent to personal jurisdiction.  For instance, in

12  *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398 (9th Cir. 1994), the district court found that the

13  forum selection clause was insufficient because it dealt only "with venue, not jurisdiction."  *Id.* at

14  1406.  The Ninth Circuit reversed, explaining that challenges "to personal jurisdiction may be

15  waived by either express or implied consent."  *Id.*  The Ninth Circuit held that such a clause,

16  where obtained through freely negotiated agreements and not "unreasonable and unjust," are

17  enforceable and can constitute consent to jurisdiction.  *Id.*; *see also Perlman v. Jackson Hewitt*

18  *Inc.*, No. 10-CV-051-LRS, 2010 WL 5470804, at *3 n.4 (E.D. Wash. July 30, 2010) (noting that a

19  "waiver of objection to venue is meaningless if it does not also contemplate a waiver of objection

20  to personal jurisdiction").

---

Ecuador.  *Id.* at 984.  The Ninth Circuit explained that international principles of comity did not bar the entry of an anti-suit injunction in situations where the parties agreed to litigate their disputes in a certain forum.  *Id.* at 994.  The Ninth Circuit also took issue with the district court's holding that the Ecuadorian court is more competent to decide the key issue, and in so stating, indicated that the choice-of-law clause in the contract specifically identified Californian, not Ecuadorian, law.

[9] The clause indicated that suit "shall be brought only in a court having jurisdiction and venue at the home offices of Winery."  *Id.* at 987.  There was no explicit reference that the foreign company consented to jurisdiction.

United States District Court
Northern District of California

9

Defendants attempt to distinguish plaintiff's cited authorities on the ground that the clauses at issue were mandatory forum selection clauses, rather than a permissive forum selection clause as is present here. *See Petersen v. Boeing Co.*, 715 F.3d 276, 278–80 (9th Cir. 2013) (applying federal law to construe a clause "requiring" contract disputes to be resolved in Saudi Arabia); *WF Capital*, 2010 WL 3064413, at *6 (applying federal law to construe clauses "selecting the federal and state courts of King County, Washington as the forum"); *Perlman*, 2010 WL 5470804, at *3 (applying federal law to clauses making "venue exclusive and mandatory in the federal and state courts of New Jersey"). Defendants contend that the difference between the "treatment of permissive and mandatory clauses is dispositive." (Dkt. No. 123 at 8.) However, defendants do not actually cite any federal cases creating such a distinction, nor do they articulate why such a distinction would ultimately matter.

Defendants' arguments do not persuade. The Agreement explicitly provides contractual permission to file suit in California. (Agreement § 15(e).) Such entitlement would be nullified unless the parties also consented to jurisdiction in this forum. Thus, the Court finds that the forum selection clause here constitutes consent to jurisdiction in California, at least as to Roberta Trading as a signatory to the Agreement.

**b. Binding Effect of Forum Selection Clause as to Kenpark and Viegas**

Having found that Roberta Trading has effectively consented to jurisdiction in California, the Court next turns to whether Kenpark and Mr. Viegas, by virtue of their connection to the contractual arrangement, should also be bound by the forum selection clause.

Specifically, plaintiff argues that in the Ninth Circuit, both parties and non-parties to an agreement can benefit from and be subject to a forum selection clause. *See Manetti*, 858 F.2d at 514 n.5 ("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." (citation omitted)). The Ninth Circuit in *Manetti* held that certain non-parties to the agreement were subject to the forum selection clause where the alleged conduct was "closely related to the contractual relationship." *Id.* (applying forum selection clause to related companies and directors of the same). Similarly, in *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450 (9th Cir. 2007), the Ninth Circuit again held that a

10

forum selection clause applied to non-signatories where the "transactions between those entities and [plaintiff] took place as part of the larger contractual relationship between [plaintiff] and [signatory defendant]." *Id.* at 456 (citing *Manetti*, 858 F.2d at 511).

Defendants argue only that non-signatories are generally not bound by contracts to which they are not parties. *See Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 824 (1979) (reversing judgments against defendants because they were only agents of the signatory corporation, not actual parties to the contract); *Henry v. Ass'd Indem. Corp.*, 217 Cal. App. 3d 1405 (1990). Defendants, however, do not address the Ninth Circuit precedent in *Manetti* and *Holland America*, which specifically hold that, with regards to forum selection clauses, non-signatories can be bound and considered to have consented to jurisdiction where their alleged conduct is closely related to the contractual relationship.

Here, the Court finds that both Mr. Viegas's and Kenpark's alleged conduct is so closely related to the contractual relationship that they too should be bound by the forum-selection clause. Specifically: As to Mr. Viegas, not only did he personally negotiate the Agreement and signed it on behalf of Roberta Trading, he also owned significant interests in Roberta Trading and Shanghai Marco and its assignees throughout the parties' performance under the Agreement. (Dkt. No. 118-1, Viegas Dep. Tr. 34:22–35:16, 38:5–10, 40:18–41:15, 43:8–11, 121:10–14; Dkt. No. 116-28 at 4–5, Roberta Trading's Responses to Interrogatories; Agreement at p. 10.) Additionally, Mr. Viegas had an active role in the relationship between the parties: he personally managed slat sales to plaintiff (*see* Dkt. No. 118-1, Viegas Dep. Tr. 24:4–11, 225:24–226:6, 229:7–14; Dkt. No. 118-2, Viegas Dep. Tr. 19:19–24); instructed plaintiff as to how much and which entities to pay for its orders (*see* Dkt. No. 118-1, Viegas Dep. Tr. 222:2–240:24; Dkt. Nos. 116-10–16, Emails re: payments from PVI); and traveled to California to discuss the business relationship and receive technical assistance from plaintiff (*see* Dkt. No. 118-1, Viegas Dep. Tr. 136:9–137:13; Dkt. No. 113, Declaration of Fairbanks at ¶¶ 9–14). And as to Kenpark, plaintiff alleges that it paid portions of its invoices to Kenpark as "commissions" and Kenpark managed the slat sales in the shipments to plaintiff. (*See* Dkt. No. 118-1, Viegas Dep. Tr. 222:2–224:9; Dkt. No. 116-15, Emails re: Kenpark bank account.)

11

1     Accordingly, the Court finds that Mr. Viegas and Kenpark are bound by the forum-
2 selection clause in the Agreement and can be considered to have consented to jurisdiction in
3 California by virtue of the same.[10]

### 2. Alter Ego Jurisdiction as to other Served Defendants

Plaintiff argues that the Court may properly exercise personal jurisdiction over Axus HK, Highton, Howin, and Noblesse on the theory that they are each alter egos of the other, as well as of Roberta Trading, Kenpark, and Mr. Viegas. A plaintiff must make a *prima facie* showing that the following criteria are met to survive a Rule 12(b)(2) motion on an alter ego theory: (1) treating the corporations as separate entities would result in inequity or injustice; and (2) a unity of interest and ownership between the corporations such that their separate personalities do not actually exist. *Ranza*, 793 F.3d at 1073 (citing *Doe v. Unocal*, 248 F.3d 915, 926 (9th Cir. 2001)). Because the Court finds that plaintiff has not met its burden with regards to the "inequity" prong, it does not address the "unity of interest" prong below.

"To establish inequity in the absence of alter ego liability, a plaintiff must plead facts sufficient to demonstrate that 'conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 963 (N.D. Cal. 2015) (finding inequity where owner treated companies as a single enterprise to "significantly and unfairly reduc[e] the amount of royalties to which [p]laintiff [was] entitled) (citation omitted). Plaintiff argues only in this regard that an inequitable result would occur if the Court does not pierce the corporate veil because the signatory companies were dissolved several years ago, and therefore, plaintiff may not be able to obtain full recovery. *See Axon Sols., Inc. v. San Diego Data Processing Corp.*, No. 09-CV-2543-JM, 2010 WL 1797028, at *2–3 (S.D. Cal. May 4, 2010) (finding city liable under alter ego theory); *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991) (applying alter ego explaining it

---

[10] Because the Court has found that Roberta Trading, Kenpark, and Mr. Viegas have consented to jurisdiction in California, the Court need not reach whether they would also satisfy the requirements of specific jurisdiction. Nevertheless, the Court notes that each would likely be subject to jurisdiction in California under a specific jurisdiction analysis given Roberta Trading's and Viegas's entry into the Agreement, and the conduct of all three defendants under the same.

12

1   would be "unjust to permit those who control companies to treat them as a single or unitary
2   enterprise and then assert their corporate separateness in order to commit frauds and other
3   misdeeds with impunity"). Such is insufficient to satisfy the inequity prong of the alter ego test.
4   *See AngioScore, Inc. v. TriReme Medical, Inc.*, 87 F. Supp. 3d 986, 1014 (N.D. Cal. 2015)
5   (finding alter ego unavailable where there was insufficient evidence to support a finding that
6   "incorporation was undertaken in bad faith or that observing the corporate form would produce an
7   inequitable result"). One of the cases cited by plaintiff also acknowledges the insufficiency of
8   such an allegation: "Difficulty in enforcing a judgment or collecting a debt does not satisfy the
9   requirement of an inequitable act." *Axon Sols.*, 2010 WL 1797028, at *3 (applying alter ego
10  theory based on allegation that the city intended to dissolve an agency to "wrongfully avoid
11  liability for the monies owed to [plaintiff]"); *see also Las Palmas*, 235 Cal. App. 3d at 1250
12  (applying alter ego where there was "substantial evidence to support that [defendants] formed a
13  single enterprise for the purpose of committing a continuing fraud against buyers").[11]
14      Despite an amended complaint after several months of jurisdictional discovery and several
15  rounds of briefing, plaintiff has not been able to allege any other bases that could satisfy the
16  inequity prong of the alter ego test. Accordingly, the Court finds that alter ego is not available
17  here. Because plaintiff does not argue any other bases upon which the Court may exercise
18  jurisdiction over Axus HK, Highton, Howin, and Noblesse, the Court finds that such parties are
19  not subject to personal jurisdiction in this forum and **DISMISSES** the same.
20  **IV.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
21      **A.    Legal Framework**
22      Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon
23  which relief may be granted. Dismissal for failure to state a claim under Federal Rule of Civil

---

[11] Additionally, here, the Court has found that Mr. Viegas is subject to personal jurisdiction on other grounds. Plaintiff conceded at oral argument that the inclusion of the same would reduce the risk of an inequitable result. Moreover, the parties whom plaintiff alleges were Shanghai Marco's assignees under the Agreement—Shanghai Lexon and Axus Shanghai—have yet to be served, and may yet be proper parties in this action. The inclusion of such parties may further reduce the risk that plaintiff would be unable to recover any damages to which it may be entitled.

Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 554–55 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). The Court will not assume facts not alleged, nor will it draw unwarranted inferences. *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

**B. Discussion**

    **1. Contract Claims: Counts One and Two**

Plaintiff brings two contract-based claims against defendants, namely, Count One for breach of contract and Count Two for breach of the implied covenant of good faith and fair dealing. Defendants argue that because Shanghai Marco and Roberta Trading are the only defendants who signed the agreements, they are the only parties that can be bound by, and

14

therefore be held liable under, the Agreement. *See Egan*, 24 Cal. 3d at 824 (reversing judgments against defendants because they were only agents of the signatory corporation, not actual parties to the contract). On such bases, defendants move to dismiss Counts One and Two against all other defendants.

Plaintiff first argues that the other defendants are liable under Counts One and Two under the alter ego theory of liability. The Court has already rejected plaintiff's alter ego argument with regards to personal jurisdiction, and does so again here.

Plaintiff then argues that, with regards to Viegas, he should not be dismissed from the action because he was the guiding spirit in the wrongdoing alleged, citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999). However, *Coastal* does not address contractual liability for signatory officers. Rather, *Coastal* holds that officers cannot "hide behind the corporation where [the officer was] an actual participant in the tort." *Id.* at 734. Plaintiff provides no other authority for the proposition that Viegas can be held liable under contractual causes of action as an officer of a signatory corporation. Accordingly, the Court **DISMISSES** Counts One and Two as to Viegas.

With regards to Kenpark, plaintiff argues that Kenpark can be held directly liable because it assumed obligations under the Agreement to manage slat sales to PVI, and also earned fees for providing such management services to Shanghai Marco and Shanghai Lexon. However, plaintiff offers no support for finding that Kenpark can, in these circumstances, be held liable under any contractual causes of action. *See Henry*, 217 Cal. App. 3d at 1416–17 ("There was no direct contractual relationship between [plaintiff] and the [u]nderwriters from which either a breach of the covenant of good faith and fair dealing or a breach of contract action could properly spring." (citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576 (1973)).[12]

---

[12] In certain circumstances, parties can be considered to have assumed liability under the contract when a "party accepts the rights and privileges of a contract." *Pacini v. Nationstar Mortg., LLC*, No. 12-CV-4606-SI, 2013 WL 2924441, at *6–7 (N.D. Cal. June 13, 2013). To support an implied assumption of liability theory, "plaintiffs must allege that liabilities were not limited in the transfer of assets, and that the intent of the parties was that they should be transferred." *Id.* Here, plaintiff has not presented any facts supporting a theory that Kenpark or Viegas assumed liability under the contract. Merely participating in the contractual relationship or

15

Accordingly, the Court **GRANTS** defendants' motion to dismiss Counts One and Two as to Viegas and Kenpark.

### 2. Tort Claims: Counts Three and Four

Plaintiff brings two tort claims against all defendants, namely Count Three for intentional interference with contract and Count Four for intentional interference with prospective economic advantage. Defendants argue that plaintiff alleges wrongdoing only by Shanghai Marco, its assignees—Shanghai Lexon and Axus Shanghai—Viegas, and Xu, of which only Viegas has been served thus far. As to all other parties, plaintiff bases liability under Counts Three and Four on its alter ego theory, which the Court has already rejected. Plaintiff raises no further arguments in this regard. Accordingly, the Court **DISMISSES** Counts Three and Four as to Roberta Trading and Kenpark.

## V. LEAVE TO AMEND

"Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, '[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Zixiang Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013)) (citations omitted) (alteration in original). "A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996)).

This is plaintiff's second opportunity to establish personal jurisdiction and allege facts sufficient to satisfy its alter ego theories of liability after several months of jurisdictional discovery involving several depositions and thousands of pages of document production. Despite such extensive procedures, plaintiff was unable to amend sufficiently its complaint with regards to personal jurisdiction over many of the Served Defendants. However, the Court recognizes that

---

accepting some benefits of certain transactions are insufficient to sustain such a theory. *See id.* (finding insufficient allegations that defendant accepted "the benefits of the contract").

16

plaintiff received several thousand pages of documents after the close of discovery.[13]

Accordingly, the Court **DENIES WITHOUT PREJUDICE** plaintiff's request for leave to amend. Plaintiff may later file a motion for leave to amend should further development of the record warrant such a request.

### VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motions as follows:

1. The Court **GRANTS** defendants' motion to strike the declarations of Russell and Liao (Dkt. Nos. 114, 115).

2. The Court **GRANTS** defendants' motion to dismiss Axus HK, Highton, Howin, and Noblesse for lack of personal jurisdiction, and **DENIES** the same as to Roberta Trading, Mr. Viegas, and Kenpark.

3. The Court **GRANTS** defendants' motion to dismiss for failure to state a claim as to Kenpark and Mr. Viegas with regards to Counts One and Two.

4. The Court **GRANTS** the motion to dismiss as to Kenpark and Roberta Trading with regards to Counts Three and Four.

Thus, the only claims remaining in this action with respect to the Served Defendants are Counts One and Two against Roberta Trading and Counts Three and Four against Viegas. Plaintiff does not have leave to amend, but may later file a motion for leave to file an amended complaint.[14]

This Order terminates Docket Numbers 106, 117, and 128.

**IT IS SO ORDERED.**

Dated: January 18, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[13] The parties raise several disputes over the nature and circumstances surrounding such late discovery. The Court need not address the validity of such disputes here.

[14] Plaintiff also requests that the Court allow an evidentiary hearing should it determine that plaintiff's alter ego allegations are insufficient to allow plaintiff the opportunity essentially to cross-examine Mr. Viegas. Because the Court's basis for rejecting plaintiff's alter ego theory does not rely on Mr. Viegas' testimony concerning the legality of certain corporate practices, the Court finds that an evidentiary hearing on the same would be unnecessary and therefore **DENIES** such request.